## J. B. B. Coal Company v. Halbert, Judge, et al.

(Decided April 26, 1916.)

Petition for writ of mandamus.

1. Mandamus—Judicial Officer—When Mandamus Will Issue.—In this jurisdiction there need not be a definite, unqualified refusal

to act on the part of a judicial officer before the writ of mandamus will issue, but only a willful neglect, unreasonable delay or refusal to act.

2. Mandamus—Matters of Discretion.—Where a judicial officer has a discretion over the subject matter, the writ of mandamus will not issue to control such discretion, but only to compel him to act where he willfully neglects, unreasonably delays or refuses to do so.

3. Mandamus—When Mandamus Will Not Issue Against a Judge.— There being, in this case, no showing that the defendant judge refused to act; and it appearing from all the facts that under the circumstances his delay in ruling was neither unreasonable nor with the intention to deny justice to the parties, the writ of mandamus will be refused.

DRURY & DRURY for plaintiff.

PROCTOR K. MALIN for defendant.

OPINION OF THE COURT BY JUDGE SETTLE—Denying writ.

The plaintiff, J. B. B. Coal Company, a corporation created under the laws of West Virginia and having its chief office in that state, by petition filed in this court complains of the failure of the defendant, W. C. Halbert, judge of the 20th judicial district, which includes the county of Boyd, to pass upon its demurrer to the sixth paragraph of an answer filed by the Norfolk & Western Railway Company to the petition in an action instituted by it against that company in the Boyd circuit court April 22, 1913, and prays that he be compelled by the writ of mandamus from this court to pass on the demurrer and decide the questions of law raised thereby. The action of the plaintiff against the Norfolk & Western Railway Company was brought by the former to recover damages claimed to have been sustained by it because of the latter's alleged failure to supply it with cars for use in its mining operations.

The ground of complaint in this action for the mandamus is that the defendant, W. C. Halbert, judge of the Boyd circuit court, by his failure to act upon the demurrer to the sixth paragraph of the defendant's answer in the case of J. B. B. Coal Company v. Norfolk & Western Railway Company, pending in that court, has prevented the making up of the issues therein and so unreasonably delayed a trial of the case as to substantially constitute a denial of justice to the litigants,

and particularly resulting in injury to the plaintiff's right. It appears from the averments of the petition herein that the Norfolk & Western Railway Company at the first term of the Boyd circuit court succeeding the filing of the plaintiff's petition against it, entered a general demurrer thereto, which was later submitted upon briefs, and that during the month of February, 1914—the date not given in the petition—the demurrer was sustained and the plaintiff given leave to amend; that on April 9, 1914, plaintiff filed an amended petition, following which, the date not being stated, the Norfolk & Western Railway Company renewed its demurrer to the petition, as amended, and on January 7, 1915, same was overruled. Shortly thereafter, the date not given, the Norfolk & Western Railway Company filed its answer, to the sixth paragraph of which the plaintiff, on March 24, 1915, filed a general demurrer, which, by an order of March 30, 1915, was by agreement submitted upon briefs that were later filed, but the dates upon which the briefs were filed are not stated in the petition. However, on December 4, 1915, the court heard argument from counsel representing plaintiff and defendant and then entered an agreed order that both sides should file additional briefs, which was done on a date not given, but as down to February 22, 1916, there had been no decision by the court of the demurrer, the petition for the mandamus was then filed.

The answer of the defendant to the petition for the mandamus, after denying that there was on his part any intentional or unnecessary delay in the trial of the plaintiff's action or in any of the preliminary motions or steps therein looking to the completion of the issues or to a trial, sets out that when he became judge of the Boyd circuit court in January, 1910, the docket of that court was, and for a great many years prior thereto had been, so heavily congested that cases on the ordinary docket were usually not tried under four or five years subsequent to their institution, and that while this condition has to a considerable extent been relieved since he became judge of the court, yet the litigation in Boyd county, both civil and criminal, has so increased that with all the time he had been able to devote to Boyd county under the court schedule given him by statute, he has been unable to clear up the docket there and at the same time discharge his other duties as judge in

other counties of the district and as special judge without his own district. That because of the congested condition of the dockets in Boyd county and the constantly increasing litigation therein, the General Assembly in 1912, at defendant's request, so amended the statute fixing the courts of his district as to give six instead of three terms of court in each year to Boyd county, which amendment became effective August 1, 1912; that in order to more expeditiously dispose of the business before the court, by the adoption of a proper rule the January, April and September terms of the Boyd circuit court each year were designated as criminal terms, at which only criminal and penal cases were tried and disposed of, and the March, June and November terms were designated as civil terms, at which only civil cases are tried or heard; that since the passage of the act in question defendant has held six full terms of court each year in Boyd county, and since the filing of the plaintiff's action in that court against the Norfolk & Western Railway Company, the defendant has tried or otherwise disposed of 427 ordinary cases, 495 equity cases and 754 criminal and penal cases and that there are now pending upon the docket of that court 266 ordinary cases, 271 equity cases and 316 Commonwealth cases, many of which were brought prior to the institution of the plaintiff's action referred to. That by a rule of the Boyd circuit court, Tuesday and Friday of each week of the civil terms are set apart as "motion and decision days," and because of the large number of motions and demurrers in the many cases pending on the docket, it has been the rule and custom since defendant became the judge of that court for counsel in cases in which such motions or demurrers were pending to deliver the papers in such cases to the court, and that the court has not been expected or required to go to the clerk's office or other place to hunt up the papers in such cases. That in the plaintiff's case the counsel on both sides live outside the district and did not hand or otherwise deliver the papers in the case in question to defendant or see that they were placed in his hands, and having an abundance of work to do in cases in which the papers were given him by counsel, he did not look up the papers in this case, and for these reasons much of the delay in the case has been caused by failure of the counsel to deliver the papers to defendant, and they were not, in

fact, delivered to him by the clerk or. otherwise, after the filing of the demurrer to the sixth paragraph of the answer or following the argument thereon, December 4, 1915, until after his return from Estill county in December, 1915, to which county he was required to go on December 6, 1915, to try certain cases as special judge, that county being outside of his judicial district; and upon receiving the papers in plaintiff's case, following his return from Estill county to his home at Vanceburg, Lewis county, near the end of the year, he was unable to complete his investigation of the question raised by plaintiff's demurrer to the sixth paragraph of the defendant's answer before having to return to Boyd county for the purpose of holding the January criminal term of court therein, beginning on the first Monday of that month.

It further appears from the answer that the investigation defendant desired to make was as to the question of jurisdiction raised by plaintiff's demurrer to the sixth paragraph of the defendant railway company's answer, which to the mind of the defendant became necessary from a statement made in the oral argument on the demurrer of December 4, 1915, as well as in one of the briefs of counsel later filed, that a case had recently been decided by the Supreme Court of the United States involving the question raised by the demurrer and claimed to be conclusive thereof; that defendant made diligent effort to obtain a copy of the opinion of the Supreme Court of the United States in the case referred to, but was unable to do so and was later advised that the case was still pending in that court upon a petition for rehearing, upon which oral argument had been allowed, but not heard. That being in doubt as to the question of jurisdiction raised by the demurrer to the answer in the plaintiff's case, the defendant concluded to defer a reasonable length of time his decision upon the demurrer in the belief that an early decision from the Supreme Court would enable him in passing thereon to follow the ruling of the Supreme Court in the case therein. That the case in the Supreme Court, as he is advised, has not yet been decided, but that it was his purpose at the March civil term, 1916, of the Boyd circuit court, to pass on the demurrer, even in the absence of a decision of the Supreme Court in the case. pending therein, and such action would have been taken

by him during the March term, 1916, but for the filing of plaintiff's petition for the mandamus herein.

The answer concludes as follows:

"Defendant states that the main trouble in the preparation of plaintiff's case is the fact that all the counsel in the case, on both sides, are non-residents of the district and, most of them, of the State; that they are not familiar with the rules of the court, nor the condition of its trial docket and expect, no doubt, to find rules and conditions existing there as they do in their own courts, and to have the court suspend the trial of jury cases when they do occasionally attend court to take up and consider their particular case. The trial docket of the Boyd circuit court for the past two years will disclose that from four to seven ordinary cases have been set down for trial each and every day during the entire civil term of the court, save on Saturday, and that jury trials are constantly going on during the entire term and the only time the court has to ever consider an equity case, or the motions or preliminary steps of an ordinary case, is at night, or when at home in vacation between courts. Defendant says that so hard had he worked to relieve the congested condition of the docket in Boyd county, that the entire bar of that county, regardless of politics, endorsed him for re-election, without any solicitation on his part, and in their endorsement publicly stated that defendant had done more than it was believed possible to do under the circumstances. Defendant says that he found on the docket of the Boyd circuit court, when he became its judge in January, 1910, many cases that had been pending there from five to seventeen years, although a very able and industrious judge, Honorable S. G. Kinner of that county, had been judge of the court for seventeen years continuously preceding defendant's election, and had done everything that ability, energy and industry could do to relieve the congested conditions there."

By an amended answer entitled a "supplemental" response," filed by the defendant, it is stated that it is the custom in the Boyd circuit court, after the ordinary cases upon the civil docket have been set for trial, that the clerk of the court causes to be issued a small printed docket, which is distributed to the members of the bar practicing in the court; that the defendant, for his own convenience, keeps on this docket memoranda of the

disposition of the several cases thereon, and finding after the filing of his original answer the printed docket kept by him for the November term, 1915, he made it a part of the supplemental answer; that the fact that there was a demurrer pending to paragraph six of the answer was not called to his attention as judge of the court until after the docket referred to had been printed; that he assigned the case for oral argument on the demurrer for December 4, 1915, as appears from an entry on the docket; and that, as appears from a further entry of December 4, 1915, it was argued on that day and the cause submitted on the demurrer and upon briefs then and thereafter to be filed.

The replies to the answer and amended answer do not controvert the material facts contained therein. No proof has been offered by either party nor have counsel filed briefs, so whatever decision we may make must be based upon the facts presented by the pleadings, record in the first action, and law applicable thereto. While more than two years elapsed between the institution of the plaintiff's action against the Norfolk & Western Railway Company and the submission of the case on the general demurrer of the former to the sixth paragraph of the answer of the latter, December 4, 1915, we are unable to say from the admitted facts furnished by the record that the delay thus shown was caused by the failure of the defendant Halbert to take any action required of him as judge of the Boyd circuit court. Following the institution of the action he passed upon and overruled a special demurrer to the petition, making objection to the court's jurisdiction of the action. Thereafter, at the succeeding June civil term and on July 1, 1913, plaintiff filed an amended petition and on the same day the defendant filed a general demurrer to the petition; and during the same term, some days later, the cause was submitted upon that demurrer, the parties being given leave to file briefs, but it does not appear from the record when the briefs were filed. It does appear, however, that at the March civil term, 1914, and on the second day of March, an order was entered sustaining the general demurrer to the petition and plaintiff given leave to amend, and that on the sixteenth day of March, 1914, during the same term, the plaintiff filed an amended petition, whereupon the defendant insisted upon its demurrer to the petition, as amended, and the

cause was later submitted on this demurrer. The date of this submission, however, is not shown, but on the twelfth day of December, 1914, which was during the November civil term, 1914, of the Boyd circuit court, the defendant's demurrer to the petition as amended was overruled, at which time it was by an order of the court then entered, given sixty days from January 1, 1915, in which to file its answer. At the March civil term, 1915, and on the 8th day of March, the defendant's answer was filed, to the sixth paragraph of which raising the question of jurisdiction, the plaintiff filed the general demurrer March 30, 1915, at which time the following order was entered:

"This day came the plaintiff J. B. B. Coal Company and tendered and filed its demurrer to the sixth paragraph of the defendant's answer to the petition herein, in which demurrer the defendant joined. Thereupon the court gave the plaintiff thirty days from the first day of April, 1915, in which to file a brief in support of its said demurrer and to the defendant thirty days thereafter in which to file a reply brief, and the said cause shall be submitted upon said briefs."

It will thus be seen that the time given plaintiff to file a brief upon the demurrer did not expire until May 1, 1915, and that given the defendant to file its brief did not expire until May 31, 1915. Assuming that each party took advantage of all the time allowed it for the filing of a brief on the demurrer, it is patent that there could have been no decision on the demurrer by the court before the June civil term, 1915. It does not appear from the record that the papers of the case were given to the court during that term or that either plaintiff or defendant insisted upon a decision of the demurrer before the term ended. The record does not contain an order setting the case down for argument on the demurrer at the November civil term, 1915, but the fact that it was argued during that term and on the fourth day of December leads us to the conclusion that the argument was allowed on the motion of one or both of the parties.

It should here be remarked that the amount of damages sought to be recovered by the plaintiff against the Norfolk & Western Railway Company is $97,023.16 and that the record in that action contains 481 pages, made up of the pleadings, exhibits and orders of the court,

showing the rulings referred to, down to December 4, 1915; furthermore that the issues made involve transactions in mining operations and the shipment and sale of coal running through a series of years, in view of which it was not to be expected that the case would proceed to trial with the ease and dispatch that ordinarily attend the great bulk of cases litigated in the courts. Moreover, it is to be considered that the plaintiff's counsel, by whom the action was instituted, reside in the extreme western part of the State, at a great distance from Catlettsburg, where the Boyd circuit court is held, and that defendant's counsel reside in the State of West Virginia. In such a situation counsel were necessarily placed at a disadvantage by their ignorance of the condition of the dockets of the Boyd circuit court and their want of familiarity with its rules of procedure, to say nothing of their inability to be present throughout the terms of the court and thereby be enabled to watch for opportunities to call up the case and obtain of the court such rulings as might have been made therein when it was not otherwise engaged. On the other hand, the judge of that court was naturally embarrassed by the necessary absence of counsel at times when he might have taken up and ruled upon questions of pleading required to be decided, and his disinclination to make such decision when they were not present. In addition, he had at all times to consider the congested condition of the dockets in his court and first try or otherwise dispose of the cases thereon, instituted ahead of plaintiff's, with all the dispatch possible, consistent with the rights of the parties concerned.

These conditions considered, the record fails to show any culpable delay on the part of the defendant, either in the matter of not ruling on the plaintiff's demurrer to the sixth paragraph of the Norfolk & Western Railway Company's answer or in any other particular complained of by the plaintiff. Manifestly this is true as to any default alleged as occurring prior to December 4, 1915, and not materially less true as to the failure of defendant to pass on the demurrer since that date, which is the thing chiefly complained of. It is apparent from the facts appearing in the defendant's answer, as amended, which are uncontradicted by anything appearing in the record, that when the demurrer was argued December 4, 1915, near the close of the November civil

term, the case was submitted on the demurrer with leave to counsel to file briefs, no time being fixed for the filing of same. At what date after December 4th they were filed, or whether they were filed at all, does not appear. It does appear, however, that on December 6th, two days after the argument, defendant was compelled to go and did go to Estill county, by order of the Governor, to try as special judge, several cases in the Estill circuit court, and that he did not complete his work there until about the beginning of the Christmas holidays, when he returned to his home at Vanceburg, Lewis county, to which place, some time during the holidays, the papers constituting the record in the case of J. B. B. Coal Co. v. Norfolk & Western Railway Co., together with those in other cases under submission, were sent him by the clerk of the Boyd circuit court, and that all these cases, or the questions presented for decision therein, were by him disposed of during the holidays, except the demurrer to the defendant's answer in the first-mentioned cases. On the first Monday in January, 1916, he was again at Catlettsburg and on that day began the January criminal term of the Boyd circuit court, which continued throughout the month of January and was succeeded by another of his courts in a different county during the month of February, and down to the time plaintiff filed its petition for the mandamus asked in this case.

The reason given by the defendant for not deciding the demurrer to the sixth paragraph of the answer in the action of plaintiff against the Norfolk & Western Railway Company following the argument of December 4, 1915, is that following a suggestion contained in the brief of counsel and his discovery of the fact that the Supreme Court of the United States had pending before it on a petition for rehearing a case which had decided the question of jurisdiction raised by plaintiff's demurrer to the answer of the railway company, his desire to await the final decision of that case led to the postponement of his decision on the demurrer until the petition for rehearing in that court might and could reasonably be acted upon and decided, it being his opinion that it was his duty to be controlled by the decision of the Supreme Court of the United States in such case. In view of the demand of plaintiff's counsel for an early decision of the question of jurisdiction arising on the demurrer, the defendant should not have awaited the

decision of the Supreme Court of the United States in the case before it. The postponement by defendant of his decision on the ground indicated, though a mistake of judgment, does not amount to an intentional failure or refusal to rule on the demurrer or a wilful disregard of the plaintiff's rights. Indeed, his answer declares that it was his intention, at the March civil term of his court, 1916, to pass on the demurrer regardless of whether the case pending in the Supreme Court of the United States had or not been decided, but that such action was prevented by plaintiff's filing of the petition against him in this case, and that he will pass on the demurrer as soon as this court renders its judgment herein, whether it grant or refuse the mandamus prayed.

It is the contention of the defendant that it is the practice in his courts for counsel, when cases are submitted for any purpose, to hand the papers to the court or cause the clerk to do so, and that at no time did he unreasonably delay in the plaintiff's action against the Norfolk & Western Railway Company, the decision of any matter or question after receiving the papers from the clerk of the court. This contention seems to be sustained by the record and the rule of practice in question cannot be condemned as unreasonable. In view of the innumerable motions and demurrers that are presented to the court for decision each term, in the absence of such rule and the assistance it requires the clerk and counsel to render the court, delays in ruling upon such matters would be so great as to disastrously obstruct the business of the court and prejudice the rights of litigants. Speed in disposing of litigation is desirable, but accuracy of decision is equally so, and parties to an action cannot complain of delay to which they or their counsel may have contributed, even unintentionally.

As well said in 26 Cyc. 193:

"Mandamus being an extraordinary writ, with prerogative features, and not a writ of right, a strong case must be presented to coerce action by a judge, the presumption being that he had done his duty. There must always be a previous request to act, and a definite, unqualified refusal, before the writ will issue."

The last statement, that there must be a definite, unqualified refusal to act before the writ will issue, is not recognized as the correct rule in this jurisdiction, for

as far back as 1812 this court, in the case of County Court of Warren v. Daniel, 2 Bibb 573, declared the rule to be as follows:

"It (mandamus) is a proper remedy to compel an inferior court to adjudicate upon a subject within their jurisdiction, where they *neglect or refuse* to do so; but where they have adjudicated the mandamus will not lie for the purpose of revising or correcting their decision." Muhlenberg Co. v. Morehead, 20 R. 376; Com. v. Harbeson, 13 R. 877; Alexander v. Moss, 28 R. 171.

And in the very recent case of Speckert v. Ray, Judge, 166 Ky. 622, we held that notwithstanding the authority conferred by section 110 of the Constitution upon the Court of Appeals, which declared it "shall have power to issue such writs as may be necessary to give it general control of inferior jurisdiction," it would only issue the writ of mandamus to compel action on the part of a judicial officer, but that if such officer has a discretion over the subject matter the writ will not issue to control such discretion, although it may have been improperly exercised. If, however, there be a refusal to act upon the subject matter or to pass upon the question upon which such discretion is to be exercised, then the writ may be used to enforce obedience to the law. But when the question has been passed upon the writ will not be used for the purpose of correcting the decision. City of Louisville v. Kean, 18 B. Mon. 9; Board of Trustees v. McCrory, 132 Ky. 326.

Here there is no charge that the defendant has willfully neglected or refused to act. Negligence and failure to act is what is charged. As said in Alexander, etc. v. Moss, Judge, *supra*:

"However cocksure of their position counsel in a suit may be, it is due to the trial court that it have reasonable time to consider the matter and to enter such decree or orders as may reflect the judgment of the court. The trial court, the litigants and this court are all entitled to have the views and conclusion of the trial judge in the matter presented. It is not unusual that judges, not feeling that they are fully advised of novel questions presented or their adjudication, take time to consider of them, to consult authorities, or even to request further argument. The circuit judge is not an automaton, to enter orders and decrees upon counsel's being satisfied of their correctness, or otherwise. He,

too, must be satisfied. In the course of judicial investigation, the deliberate conclusions of the trial judge, whether concerning law or fact, ought to have, and do have, weight in the final determination of the question. While dispatch of litigations before the courts is a course to be commended, certainly skill takes rank of celerity."

We are aware that section 14, Bill of Rights, found in the Constitution of the State, declares:

"All courts shall be open and every person for an injury done to him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

But this provision cannot be invoked as here attempted, unless it is clearly made to appear that there has been such an unreasonable or arbitrary failure or refusal upon the part of the judge to act as would so unduly delay a trial or such preparation for trial, as to amount to a denial of justice. As in our opinion no such showing has been made in this case, the writ of mandamus is denied and the petition therefor dismissed.